20-1905, Mr. Clark, Mr. Sfarney, and Mr. Lynch. Yes, thank you, Your Honor. May it please the Court, I'd like to reserve four minutes for rebuttal, if I may. You sure may. Thank you. Thank you, Your Honor. Now, there are a number of interrelated issues in this case, but I'd like to try to, in this point, just quickly address three points. Can I just, on just one thing, just at the outset, what specific evidence do you have that Mr. Mahan may be charged with harassment or stalking again? Well, the specific evidence is that he's been charged on four separate occasions, and he has, there are people out there that we know to have animus towards him who have repeatedly made false allegations against him. Again, not once, not twice, not three times. But I think that given these, the history of the case, that is a very strong evidence that there remains a reasonable chance that he could be prosecuted again. But also, if I may also point out, that in this particular case, because there are First Amendment claims, with respect to free speech issues, as Mr. Mahan has pointed out in Count 1 of his complaint, was that New Jersey Statute 2C33-4 is overbroad, non-constitutionally vague, with a chilling effect on free speech. And as the courts have said repeatedly, in the First Amendment context, the mere fact that there is a statute that restricts speech, which may lead to self-censorship, is itself a serious problem, whether you're ever prosecuted or not. Mr. Clark, there are mootness precedents, Los Angeles v. Lyons, someone claiming unconstitutional arrest and chokehold. Constitutional claim. Court says, we're not going to presume you're going to get arrested again. Right? We're going to presume you're going to follow the law, and when that comes up again, we can, if it ever comes up again, but we presume you're going to avoid future contact with law enforcement. Why doesn't that mean that the claim's moot? Well, if I may address Lyons, I don't think that's exactly what Lyons said. So what Lyons had actually said was that, first of all, there were damages in the case. So the case was not moot as to damages. Lyons continued as to the damage claim against the city of Los Angeles, which should be in this case as well, as Mr. Mahan has claimed against Bayonne. But the chokehold in that case, what the court was saying was that the likelihood of him both being arrested and being subject to a chokehold, which had apparently actually been suspended, so the chokeholds had been suspended by the city, and they said under those circumstances, the likelihood of him being arrested and being subject to a chokehold was pretty remote. I remember pretty specifically that one of the dispositive rationales in Lyons was, we're not going to presume you're going to get arrested again. We're going to presume you're going to comply with the law and not get arrested again, and it's speculative to assume that you're going to fall afoul of the law and get arrested again. Well, again, I think that the other point in Lyons was that there had to be a chokehold employed. So the point that Lyons made was not everyone who was arrested is subject to a chokehold. In fact, apparently a tiny minority of people actually arrested were subject to chokeholds. This is a case where there is still a law on the books. And in fact, I think Mr. Lyons was only choked once. Mr. Mahon was prosecuted four times. So this is much more like, for instance, the case of Woolley v. Maynard, where Mr. Maynard was prosecuted three times for covering up his license plate. And so they could have said the same thing. Well, we don't know. We can assume that Mr. Maynard is going to follow the law and not be arrested again. But that's not how the court proceeded. And in this case, because Mr. Mahon is challenging a statute which is on the books, which is still enforced, which has been enforced against him repeatedly, and which has a chilling effect on free speech. But OK, doesn't the harassment depend on a restraining order, though? Wasn't it predicated on violating a restraining order? No, no, not at all. He's not subject to a restraining order, correct? Not at the moment. He was subject to a restraining order, which was part of the Second Amendment claim. So this restraining order provided that... But the restraining order-related claims are all moot. Well, I don't believe so, Your Honor, because the restraining order-first of all, a First Amendment case doesn't become moot. First Amendment cases become moot? The First Amendment is generally taken under the standing issue. But the First Amendment, once you have standing, if there's a chilling effect on free speech, this chilling effect is something that is going to prevent the case from becoming moot. Now, it might be moot if they change the statute. If they repealed the harassment statute, that would be a different case. They have not repealed the harassment statute. Woolly is a case in which the plaintiff was going to continue to tape over live free or die. And so the conflict with the statute was unavoidable. Mr. Mullen doesn't claim he's going to stalk or harass anybody that has a First Amendment right to do that. Do you have a First Amendment case that says no, mootness does not apply when you've stopped the conduct? Woolly doesn't seem like it's on point. The conduct in this case is being annoying. And I want to get back to the TRO, but I want to address Your Honor's question as well. The statute makes it a crime for anyone who, quote, makes or causes to be made a communication or communications anonymously or at extremely inconvenient hours or in offensively coarse language or in any other manner likely to cause annoyance or alarm. I can guarantee you every single one of us in New Jersey violates that every single day. I'm probably annoying you right now, Your Honor. I could be arrested for harassment because I made any other manner likely to cause annoyance or alarm. That's why this is such a crazy statute. So this is worse than the live free or die case, right? Mr. Mullen cannot go through his life without making a communication that somebody somewhere might construe as annoying. All right. So can we talk a little bit about Monell in 1983? When in the record and give me a specific citation is the first time you specifically mentioned Monell in 1983 in connection with count three? Because there's no damages claim on one and two. You're saying there's damages in count three. But when did you specifically raise that? Well, first of all, there are there are damages against city of Bayonne on several of the counts. The the complaint, of course, doesn't specifically say Monell. I mean, it does. It doesn't say it. When's the first time you specifically said Monell in 1983? Well, we would have raised it in the summary judgment because of a citation. Where where am I supposed to look in the record for the summary judgment? Yeah. Let me just find that for you real quick. Why is it why is it timely to raise it for the first time in a brief in opposition to summary judgment? Why does the district court have the power to say that you forfeited the issue if you never put it in your complaint or amended complaint? Well, the complaint challenged a number of different policies of the city of Bayonne. What authority says that the district court abused it, erred as a matter of law in not allowing you to raise this issue in the opposition to summary judgment? What authority says district courts shouldn't say too late? Sorry. Well, a complaint has to be construed broadly and Do you have authority, sir? Yes. The rules that say complaints should be brought Cite something to me, sir. Let me give you the Rule 56 of the Federal Rules of Civil Procedure you think of Right. That's what I was going to cite. Okay. Is there anything in there that speaks to this that says the plaintiff shall be allowed to amend his complaint in opposition to summary judgment? I'm not aware of it. Well, of course, but we didn't amend our complaint in opposition. Okay. You got no other authority. Move on. Okay. But the point is, we brought a complaint against city of Bayonne under 1983 for various policies that were unconstitutional. And then I think the point that's being made is that the You didn't raise the Monell claim in any of the three complaints you filed. And it would seem logical that the court might then say when you're that summary judgment. Whoa. Okay, you've had three bites of this apple enough enough and a Monell claim is tough to make anyway. So at this point, it You would concede this is not your strongest claim, but you would have brought it right Well, I think our First Amendment claim is the is the strongest but Again, I mean, I've seen me repeating myself. The fact is in a complaint. You don't cite a particular case, but we cited the policies of the city of Bayonne. So this is not a And takes away somebody's constitutional right and that policy or practice should be rectified and you can get money damages. And be held liable. Right. And we asked for monetary relief from Bayonne. I think I'm almost out of time. Don't worry about it. You're on our time. So Okay. Thank you. You can understand why Judge Wiginton Was kind of looked at this and go, wait a minute. You had three complaints. And you'd never mentioned that Monell claim until summary judgment like this. It's not really an aha moment. It's a, it's a really tough thing to prove. And moreover, when you take a look at, for example, count five, which is the custom. This is where you might get into Monell of granting domestic violence restraining orders to women while denying them to men. I'm not sure how I would apply to a court, necessarily, but you don't give 10 fictitious defendants and you don't even mention the Attorney General or the city of Bayonne in the header. Well, that's true. Not in the header. But as we pointed out a number of the cases, the header itself is not determinative. We have to look at What's actually alleged in the complaint and looking to complain as a whole and we obviously talk about the practice of the state of New Jersey and of the municipalities involved that they are Enforcing in terms of count five enforcing the statute in a discriminatory way. And we had specific instances where Mr. Mellon again in the complaint had pointed out, for instance, that his wife had trespassed. And when he tried to make a report, they, they didn't even take a police report. I have one question before my colleagues, my brothers, but Do you have any evidence of bad faith from the judges are in this case. I mean, the product and even the prosecutors when the case was first brought The wife made a statement. They didn't know that she had lied at that time until like December of 2015 or so weren't they just led astray by by the wife's allegations. No, your honor. It's much more than that. In fact, there are there are a number of problems. But for instance, one of the issues was They own never ever makes a determination of mens rea. Alright, so we actually had the court clerk Jenny machine and in her transcript. She was asked specifically about men's rea and she had no idea what it was. Right. And so the Point being that when you are a judge or an officer and somebody is making the types of complaints that the wife made. I said, December 15 is December 16 They finally found out that it was not true. But before that, if you don't act. And something really bad happens, then, then you're really in deep trouble as a municipality or a judge and so What Do you have the shows bad faith on their parts in connection with this particular case. So a whole list of issues. So first of all, New Jersey statute nine colon six dash 8.13 provides anyone acting pursuant to this act and making a report shall have immunity from liability civil or criminal city of being own prosecuted. Mr. Malhan for making a police report that was Immunity from liability under a statute and he prosecuted in any way they did not know of any other case they prosecuted. Mr. Malhan for for actions that did not take place in the city of Bayonne And when we asked city of Bayonne about this. They said no, they wouldn't normally prosecute anybody for action that did not take place within the city of Bayonne, but they prosecuted. Mr. Malhan anyway. So this stuff they said took place in New York. They don't like Is it your best Factual case that despite the family courts ruling in December of 2016 three months later, a grand jury for the criminal court indicts Hudson County prosecutor goes before grand jury and gets an indictment on the charge of stalking Isn't that where You're really Have a possible Claim or Wait a minute. Why are they doing this three months later after the family court dismissed the TRO and the complaint. Well, yes, you're absolutely right, Your Honor. And again, to go back to January 2017 The state made a motion to dismiss for lack of standing arguing and this is on. You can look at the appendix 15 and appendix 818. They said it was highly unlikely Given that the family courts decision. Mr. Malhan would ever be prosecuted again. That's what they said in January 2017 but three months later, he was prosecuted. He was arrested. He spent two months in jail and that Case lasted months. They still didn't dismiss that case. Two months or two weeks in jail. He spent two weeks in jail. Okay, it was two months. Yeah, two months later. And again, that's the damages. The damages was all from the city of Bayer owns conduct in this case. They didn't even bother to verify his address. He was not aware of this going on because they don't bother to verify the address which led to his arrest. But again, the point is the if I can just finish up very quickly. So he's indicted in March of 2017. That was not dropped until October of 2017. Mr. Malhan had to spend months fighting this. He spent time in jail. He had to hire attorneys. Then the Bayon case lasted again. The Bayon case lasted until December of 2017. Even after the family court judge found Mr. Malhan not only hadn't harassed Ms. Myronova, he found Ms. Myronova was totally incredible. She had falsified evidence. Her testimony was crazy. That wasn't the word he used, but that's the basic idea. So again, for the state to come back again and say, oh, by the way, he's never going to be prosecuted. That's what they told us in January 2017. They were wrong then and they're wrong now. Mr. Malhan remains at risk of being prosecuted. But has anything happened since October of 2017 when the indictment was dismissed? Well, there's been no further adverse action. But again, we think that's because all this was pending. I mean, Bayon left off on Mr. Malhan because he sued them. And so, you know, if he had not sued them, this is why it gets into the issue of voluntary cessation. Bayon stopped harassing Mr. Malhan probably as a result of his court cases. Wasn't Bayon... I mean, Bayon didn't harass Mr. Malhan because they didn't like him. They were reacting to Myronova's complaints against Malhan. And if she doesn't make any complaints, the city of Bayon's not going to do anything, are they? Well, it wasn't just Myronova, but Your Honor, again, he was prosecuted for making a police report that was privileged. But there's no one else other than Malhan that we know of who's ever been prosecuted in Bayon for making a police report in Jersey City. He was prosecuted for actions that took place in Jersey City. He's the only one. You know, we are not going to look at the constitutionality of any of this if we can find other grounds to get rid of it. And that's what we're aware of. And the fact that it's not Bayon itself that has taken off against Mr. Malhan, the fact that this is part of a nasty divorce, and the federal courts are not particularly happy in getting involved in divorce proceedings, no matter one way or another, that we are going to look at mootness. We're going to look at proper party. We're going to look at those considerations in ruling on this case, rather than the constitutionality, probably, of a harassment statute. Well, I appreciate that, Your Honor. But again, the wife is not a party to this case. The city and the state are parties. But the wife is an instigator of what's going on, and Malhan is an instigator. And if the two of them could just sit on their hands and behave themselves, there's no need for any city or county or court to get involved in this. Well, again, respectfully, Your Honor, Mr. Malhan was behaving himself, as in fact the family court found when they dismissed all these things. They said Mr. Malhan did nothing wrong. In fact, all these cases, they found Mr. Malhan did nothing wrong. I said your grievance is against different people. You have a bunch of John Does in count five, and you haven't specified who they're against. Your grievance in count three is really against Hudson County, isn't it, right? They're the ones who, Hudson County's prosecution, but Hudson County isn't a defendant here. So why are you naming City of Bayonne in count three, when it's, if you have a grievance, it's against Myronova or it's against Hudson County? Well, I don't see how we can sue Hudson County. Hudson County is a political subdivision of New Jersey, and I don't see how we can even make out a case against Hudson County. Well, if you can't make out a case against Hudson County, maybe you don't have a case. Well, if you're talking about a Hudson County prosecutor, well, they're state officers. They're not county officers, even though they're called Hudson County, is my understanding. So, I mean, it may be different in other states, but again, the point is that Bayonne was the one that initiated this. Bayonne was the one that sent the indictment to Hudson County, and they were the ones that misspelled Mr. Malhan's name, gave them the wrong address. And then the Hudson County court, Hudson County prosecutor, relying upon the incorrect information was one of the reasons Mr. Malhan was arrested. Of course, again, Hudson... We're aware of all these facts. I shouldn't have reopened the can of worms. At this point, why don't we hear from Messrs. Farney and Lynch, and then we'll get you back on rebuttal. Thank you, Your Honor. Thank you. Mr. Farney? Thank you, Your Honors. May it please the court. This really comes down to a case of the state of New Jersey and the city of Bayonne becoming pawns in this marital dispute that has been ongoing since approximately 2012. The fact is, there has been no prosecution by anyone in Bayonne since 2017. The plaintiff's complaint only asserts a claim of malicious prosecution by the city of Bayonne. There are five elements that must be met. All five of those must be met. When you fail to meet one of those elements, the eggshell cracks, and it's broken forever. Here, we have two cases where probable cause was found. Mr. Rothstein, which is the boyfriend of Ms. Myronova, he certified under oath that these complaints were being made against him and that they were being done to harass him. Not that he was making these reports anonymously or making the reports in violation of 9-6-813. These complaints were being made, according to Mr. Rothstein, falsely and maliciously against him because he was the boyfriend of Mr. Malhan's ex-wife. That was taken into account, and that case was dismissed within one month, one court appearance, and the case was dismissed in the city of Bayonne. In the second case, Ms. Myronova comes to the court. She has all of this evidence that she's been harassed and stalked by Mr. Malhan. She presents it to the judge. The judge hears her, finds it to be credible at the time, and then a charge is entered. Now, Mr. Malhan's address was correct. There is nothing incorrect about his address. It went to 10 Huron Street in Jersey City. Mr. Malhan got notice of that. Mr. Malhan failed to appear in Hudson County when this case was transferred up because a stalking charge is an indictable offense that has to be sent up to the prosecutor. All of the case that Mr. Clark makes or Mr. Malhan makes here is against Hudson County, which he could have sued. It's not just because they're a political subdivision of the state. He could have actually sued Hudson County, but he didn't because he thought that it would be easier to go against Bayonne. Bayonne sent this up to Hudson County. Hudson County returns it, saying we've now had evidence here. He failed to appear for his first arraignment, but we've heard evidence that suggests that she's not credible thanks to the family court. This finally made its way up here. We're dismissing the stalking charge. We're downgrading it just to harassment. City of Bayonne, you can continue with that case because that case is a disorderly person's offense to be decided in municipal court. One procedural question. Why would Bayonne not be a proper defendant on the claims for injunctive relief? In other words, you enforce and administer New Jersey's laws on harassment, stalking, domestic violence, etc.? Well, because quite honestly, Your Honor, there is no injunctive relief here. Well, there was a TRO entered, right? Correct. When the initial complaint was made, yes. Asking procedurally, why would Bayonne not be a proper defendant on those claims for injunctive relief, regardless of the merits? Well, because quite honestly, Your Honor, it's that the injunctive relief sought here is prospective. That's why it's not a proper party here. This is a prospective relief. There is no claim that this is ever going to happen again, because quite honestly, in now three years, it hasn't happened. Almost four years. Almost four years it hasn't happened. This was clearly the ex-wife wanting to get back at her ex-husband. I believe they're still married. Three years, you're right. The plaintiff's ex-wife wanting to get back at her husband for whatever spousal complaint that she had against him. And that really is the issue here, is that these were claims made by a citizen against another citizen in the city of Bayonne. Bayonne did their job in filing these charges, adjudicating them properly, and then dismissing the case within one or two court appearances. I believe there were two court appearances. One was a continuation. All right. Any questions of my colleagues for you before we get to the Attorney General's office? I have no questions. No. Okay. Let's hear from Mr. Lynch, because I do have more questions of him. Thank you, Your Honor. Can everyone hear me okay? Yeah. Yes, we can. Just announce your name, I'm sorry, for the record. Deputy Attorney General Matthew Lynch. All right. Thank you. Just enlighten me on some of the facts. Okay. In December 2016, the family court dismisses the TRO and the complaint, because it found that Ms. Marinova's allegations of domestic violence were fabricated. Now we go three months later, and Hudson County Prosecutor's Office proceeds with seeking and gets an indictment on the charge of stalking. What happened? Why did they do that? Was there some other type of claim they had, for example? What was the stalking claim about? Well, one, for clarification, Your Honor, I don't represent the… I understand. I get it. So I don't have any personal knowledge about what happened there. Two, I don't believe Mr. Clark or any other defendants in this case ever got the grand jury minutes unsealed by Hudson County. So we don't know for absolutely sure what it was that the testimony was that was put forth by the grand jury. There were some emails that were produced by Ms. Marinova in answering a subpoena. I'm not positive they're in the appendix in this case, but they showed some communication between her and an assistant prosecutor at the Hudson County Prosecutor's Office, where she was forwarding to him communications not only to her, but to other individuals by Mr. Malhan. So I guess the answer, and maybe Mr. Clark could, on rebuttal, point to other issues, but it's not 100% clear as to what all the evidence or testimony that was put forth for the grand jury that led to the indictment. It may have been other things other than just the email communications, and we don't absolutely know that for sure from what I understand. Let me then go to, in connection with the count one, which is the harassment statute is allegedly overbroad and unconstitutionally vague. Putting mootness aside… Sure. …the harassment statute does appear to be quite overbroad. Have you had to defend this before? I'm not 100% sure. I know that Mr. Malhan has brought a challenge. There's actually another challenge brought to… And I should have said quite overbroad. I should have said quite broad, and the question then becomes, does it cross the line of overbroad? Right. Have you had any previous litigation on this? Well, in the criminal side, yes, and in fact, that was how I was going to lead my oral argument today, and it's perfectly fine that you had a question for me right off the bat. But in December of 2017, somewhat coincidentally, right around the same time that the final municipal charge for harassment was being dismissed against Sir Andrew Malhan, the New Jersey Supreme Court issued the opinion State v. Burkert. That's 174A 3rd 987. And, you know, I briefed this on the merits and summary judgment below. It wasn't a part of our briefs before this court, and I apologize for that because, you know, we're focusing more on the mootness. But in that case, the Supreme Court found that the harassment statute was overbroad, vague, and then engaged in a saving construction of the statute and held that to the extent that the statute targets purely expressive activity, it must conform to the First Amendment and only apply to expressive activity that would either reasonably put a person in fear for his safety or security. Or that would intolerably interfere with that person's reasonable expectation of privacy. So as of December 2017, that is the law of New Jersey because that's the final pronouncement of the state's high court in relation to that statute. But on back on the mootness point, which I know you are primarily interested in, you say that the claim here does not evade review. Because if Mr. Bowen is charged again, he can get review of the constitutional claims in state court. Can you walk me through that? How would that claim be heard in time in state court? Well, there may be there is part of a part of a conundrum. Obviously, it would be heard if there was a conviction in state court, because then he would have appellate rights to appeal it based on either an as applied or official challenge to the statute. But there is a there is admittedly a problem potentially there in relation to if a court were to apply the younger abstention doctrine to to something while cases were proceeding. But I would submit that, you know, the thus making the case moot, which is a jurisdictional issue, is not the route to potentially cure that. If anything, you know, there are other prudential doctrines that could be potentially waived by the courts rather than mootness, which is jurisdictional. So there may be instances where it won't be able to be challenged again. But that's also what the overbreadth doctrine of prudential standing is for to where so if it allows for other individuals who are charged or who are convicted that maybe the statute would be constitutional as applied to them, they are able to challenge it on its face in on behalf of the other individuals or vice versa, but for the that were where it wouldn't be unconstitutional. So I feel like the overbreadth doctrine partially cures that and I feel like there are perhaps other ways through other prudential doctrines to address that rather than finding some exception to the mootness doctrine. Mr. Lynch, can I ask you, New Jersey has an unusual structure, one of the few states that has a unified system of prosecution under the Attorney General. So is the Attorney General the proper defendant for claims against the New Jersey courts on this sex discrimination? Is New Jersey the Attorney General the proper defendant for these claims against Hudson County? Help me to understand what your position is about whether the Attorney General is basically a synecdoche or a stand in for the entire state of New Jersey and all of its courts and prosecuting entities. Sure, Your Honor. One, in relation to the courts, the courts, both the state superior courts and municipal courts are a part of the entirely different branch of government over whom the Attorney General has no authority at all. So therefore, the Attorney General for a prospective injunctive or declaratory relief claim would not be the proper party in relation to those courts. In relation to the prosecutor's office, it's a little bit complicated. You know, Mr. Clark was actually correct earlier when he was saying that the county prosecutor's offices are actually subdivisions of the state. The governor appoints the county prosecutors, but there is a semi autonomy for them from the Attorney General. So while if the Hudson County prosecutor's office was sued for damages, they could request representation and identification from the state under what it's the right doctrine, the right case. But if for an injunctive relief claim over like prosecutions or things of that matter, our position is that the Attorney General is the proper party for something in relation to that because under New Jersey's laws and under the Criminal Justice Act of New Jersey, the AG has pretty broad powers to issue directives and guidance to the prosecutors. He has a general supervision, but not a specific supervision such that he could issue, say, a directive saying prosecutors are not to prosecute harassment or stalking charges under these circumstances. And something like that kind of actually happened several months ago in relation to the coronavirus and the state's homicide statutes. The AG in April issued a directive about giving the prosecutors orders in relation to not prosecuting or not prosecuting health care providers when they, for instance, when they're making triage decisions in terms of care. So if you have any further questions, that's kind of my explanation as to that. Any further questions? Judge Roth? No further questions. Judge Bevis?  Okay, thank you. Mr. Clark? Yes, thank you, Your Honor. I'll try and respond to a few points and maybe go in sort of reverse order. But again, I think the Attorney General conceded that they are the proper plaintiff for challenging some of these practices and statutes, particularly the statutes, the harassment statute, the statute that purports to permit courts to suspend Second Amendment rights, even in nonviolent cases such as this one where the allegation was he sent an email. So, again, they certainly seem to be proper. In terms of Younger, I do want to make a point about that that I wanted to make and to give a chance to. Because in this case, the state did invoke Younger exception, the Younger Doctrine, and it did delay the case. And we have the entire transcript in the record, starting at page 64, in which they came into court and we were actually asking for an injunction against this statute, the harassment statute. And they invoked Younger and we didn't get it, largely, apparently, because of Younger abstention. So, frankly, I think it's rather absurd, if not unconscionable, for a defendant to invoke Younger, which delays the case, and then come back and say, by the way, now it's moved. First, we had Younger to delay it, and now we claim it's moved. So I don't think – I think, frankly, as a matter of law, this court should adopt that once you invoke Younger and you delay the case, coming back later and saying now it's moved because it's been so long is a heads-high, wind-tails-you-lose situation. So, again, in terms of Burkert, the case that they mentioned, the big point I want to make is that Burkert applied only to subsection C of the harassment statute. Subsection C of the harassment statute involves conduct. And, obviously, I'm sure the court will take a good look at Burkert. But subsection A was what I quoted earlier. That's the makes-or-causes communication anonymously. It's a constitutional right to make an anonymous communication. They treat it in convenient hours, offensively coarse language. Burkert did not touch subsection A. It only touched subsection C. So this statute remains broadly overbroad for those particular reasons. Your Honor was also asking about the prosecution in March. And I would just tell the court, again, I don't know how much of this is in the record, but certainly it appears to be the very same allegations. In fact, this was something that, again, that Bayonne had sent up to the prosecutor's office based on these very same allegations. So they were all pretty much interchangeable. I don't believe there were any new allegations. And, again, this was actually something we had discussed in this proceeding before the court in January. I think it was January 2016 where we were talking about the difference between the harassment and the stalking. But the stalking statute incorporates the harassment statute. The stalking statute says multiple acts of harassment are stalking. And, again, that was why we were piggybacking this and saying, overall, we're not challenging the stalking statute, except insofar as it says multiple violations of harassment are, in fact, not just what we would call a petty disorderly offense, but it's actually a higher-blown criminal offense. So, again, I think that answers Your Honor's question as to whether it was the same allegation. All right. Thank you. Thank you to all counsel for well-presented arguments, and we'll take the matter under advisement.